UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____  )
                                          )
RAYMOND BROWN III,                        )
                                          )
            Petitioner,                   )
                                          )
      v.                                  )
                                          )   Civ. Action No. 14-1777 (ABJ)
UNITED STATES                             )
PAROLE COMMISSION,                        )
                                          )
            Respondent.                   )
_____  )

**MEMORANDUM OPINION**

In this action for a writ of habeas corpus, petitioner Raymond Brown III challenges the United States Parole Commission's authority to revoke his parole and to rescind credit for the eight years he spent on parole ("street-time credit"). Petitioner contends that the Commission has violated the separation of powers doctrine and the Constitution's *ex post facto* clause and double jeopardy clause. The Commission counters that petitioner's grounds for relief lack merit. *See* Gov't's Opp'n to Pet'r's Pet. for a Writ of Habeas Corpus [Dkt. # 6]. Since the Commission's authority over D.C. Code offenders is settled, and the challenged decision complied with D.C. law, the Court agrees that petitioner has stated no grounds for relief. Accordingly, the petition will be denied for the reasons explained below.

I.   **BACKGROUND**

In December 1992, petitioner was convicted in the Superior Court of the District of

1

Columbia of assault with a dangerous weapon, kidnapping while armed, and possession with intent to distribute heroin. He was sentenced to an aggregate prison term of three to fifteen years. Gov't Ex. 2.[1] Petitioner's custody beyond fifteen years stems from his failed parole supervision terms.

### A. First Parole

On April 18, 1996, the then-D.C. Board of Parole released petitioner to parole supervision, where he was to remain until the expiration of his sentence on December 7, 2007. Ex. 3. Petitioner agreed to "narcotics surveillance" and an "outpatient drug program" as special conditions of his parole. *Id*. Four months after his release to parole, petitioner was arrested in the District for possession with intent to distribute heroin. Ex. 8. He was released on a personal recognizance bond. *Id*. A jury convicted petitioner of the new charge on April 21, 1998, and he was sentenced on June 10, 1998, to a prison term of two to six years, running consecutively to any other sentence. Exs. 5, 8; *see United States v. Brown*, 1996 FEL 007523 (Sup. Ct.).

On April 22, 1998, the Parole Board issued "a detainer warrant based on [the foregoing] allegations of criminal violation(s) of parole." Ex. 4. The warrant was executed the following day, on April 23, 1998, by petitioner's arrest. Ex. 8. The Parole Board conducted a parole revocation hearing on July 7, 1998, revoked petitioner's parole on July 30, 1998, and deferred consideration of reparole until petitioner became eligible on the aggregated sentences.[2] Ex. 7.

---

[1]   All of the cited exhibits are the Commission's certified documents attached to the government's opposition [Dkt. # 6-1].

[2]   When a later sentence is ordered to run consecutively to any other sentence, the prisoner is credited for "the maximum and the minimum term of imprisonment for time spent in custody, or on parole . . ., as a result of the offense for which [that] sentence was imposed." D.C. Code § 24-221.03(a).   To the extent that petitioner is challenging the lawfulness of the Commission's

2

### B.  Second Parole

In November 1999, the Commission, having assumed parole responsibility over D.C. Code offenders, held an initial hearing for petitioner and scheduled a parole rehearing in June 2000.[3] Ex. 9.  On December 20, 2000, petitioner was released to parole supervision, where he was to remain until the expiration of his sentence, recalculated to be November 30, 2015.  Exs. 10-11. Approximately eight years later, on April 8, 2008, the Commission issued a parole violator warrant based on the following four charges: use of dangerous and habit-forming drugs; failure to submit to drug testing; failure to report to supervision officer on several listed dates; and violation of the special condition of drug aftercare.  Ex. 12.

The warrant was executed on April 30, 2008, by petitioner's arrest, and petitioner denied the charges at a probable cause hearing held on May 16, 2008.  Ex. 14 at 1.  However, on June 30, 2008, petitioner accepted the Commission's proposed expedited decision to revoke his parole, rescind his street-time credit, and set a reparole date of August 27, 2008, after petitioner's service of six months' incarceration.  Petitioner accepted responsibility for the charged behavior, and he waived his right to a revocation hearing and to appeal the Commission's decision.  In addition,

---

aggregation of the consecutive sentences to determine his parole eligibility, *see* Pet'r's Reply at 3-4, the Court of Appeals long ago concluded that such claims "are patently frivolous and without the requisite semblance of a foundation in law."  *Goode v. Markley*, 603 F.2d 973, 977 (D.C. Cir. 1979); *see accord Bryant v. Civiletti*, 663 F.2d 286, 289-90 (D.C. Cir. 1981) (concluding from *Goode* that prison officials could properly "aggregate consecutive sentences for the purpose of determining parole eligibility").

[3]   The U.S. Parole Commission assumed responsibility over D.C. Code offenders in 1998 as a result of the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, 111 Stat. 712, 734-37, codified at D.C. Code §§ 24-101-142.  *See Fletcher v. Reilly*, 433 F.3d 867, 870 (D.C. Cir. 2006) (discussing "Changes to Parole and Reparole Regulations for D.C. Code Offenders").

petitioner agreed to special parole conditions consisting of drug, alcohol, and mental health aftercare programs. Exs. 15-16. On August 27, 2008, petitioner was released to parole supervision, where he is to remain until expiration of his sentence, recalculated to be December 28, 2022. *Id.*, Ex. 17.

### C.  Current Status

Petitioner is on parole under the supervision of the D.C. Court Services and Offender Supervision Agency. Gov't's Opp'n at 4 n.3. He filed this action on October 23, 2014, claiming that the Commission's recalculation of his sentence expiration date constitutes an unlawful extension of the Superior Court's sentence. *See* Pet. at 3-4. Petitioner insists that his "parole sentence . . .has already expired." Pet'r's Mot. to Strike the Gov't's Opp'n Mot. and to Vacate the Pet'r's Parole Sentence Today at 16 ("Pet'r's Reply") [Dkt. # 8].

## II.  ANALYSIS

The extraordinary remedy of habeas corpus is available to District of Columbia prisoners if the prisoner shows that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner's invocation of the separation of powers doctrine and the double jeopardy clause mistakes the role of the paroling authority, and his *ex post facto* claim is baseless.

### A.  Separation of Powers and Double Jeopardy

Petitioner's separation of powers and double jeopardy arguments go hand in hand. He contends that the Parole Commission "re-sentenced" him in violation of the double jeopardy clause and that act usurped the role of the judiciary. *See* Pet. at 3-4. District of Columbia law confers jurisdiction in the Commission to grant, deny, or revoke a District of Columbia offender's parole

and to impose or modify his parole conditions.  D.C. Code § 24-131(a), (c).  Those functions do not usurp a judicial function because they are performed in "a separate administrative proceeding," *Maddox v. Elzie*, 238 F.3d 437, 445 (D.C. Cir. 2001), as part of the execution of a court-imposed sentence.  Thus, "courts in this Circuit have . . . unanimously recognized that the Commission's exercise of its supervisory authority does not usurp the judicial function or offend the doctrine of separation of powers."  *Rahim v. U.S. Parole Comm'n*, 77 F. Supp. 3d 140, 145 (D.D.C. 2015), citing *Smallwood v. U.S. Parole Comm'n*, 777 F. Supp. 2d 148, 150 (D.D.C. 2011) (collecting cases) (other citations omitted)); *see Thompson v. District of Columbia Dep't of Corr.*, 511 F. Supp. 2d 111, 114 (D.D.C. 2007), quoting D.C. Code § 24-131(c) (the Commission "does not usurp a judicial function when, as here, it acts 'pursuant to the parole laws and regulations of the District of Columbia'"); *Hammett v. U.S. Parole Comm'n*, No. 10-442, 2010 WL 1257669, at *1 (D.D.C. Apr. 2, 2010) (observing that "[t]his argument, and similar separation of powers arguments, have been raised often and rejected each time") (examining cases).

The double jeopardy clause "prohibits the executive branch from doubling down, bringing multiple prosecutions or seeking successive punishments against a defendant for the same criminal offense."  *United States v. Morrow*, 102 F. Supp. 3d 232, 248 (D.D.C. 2015), quoting *United States v. Cejas*, 761 F.3d 717, 730 (7th Cir. 2014).  Since, as already stated, a parole proceeding is not a new criminal prosecution but rather a continuation of the original sentence that resulted in parole, "jeopardy does not attach." *Hardy v. United States*, 578 A.2d 178, 181 (D.C. 1990), examining cases from the Fifth, Sixth and Eighth circuits.  *See U.S. v. DiFrancesco*, 449 U.S. 117, 137 (1980) (finding "no double jeopardy protection against revocation of [parole] and the imposition of imprisonment [because] [such] criminal sanctions do not involve the increase of a

5

final sentence."); *accord Johnson v. United States*, 529 U.S. 694, 700 (2000) (noting that "treating postrevocation sanctions as part of the penalty for the initial offense . . . avoids [double jeopardy] difficulties"); *Campbell v. U.S. Parole Comm'n.*, 563 F. Supp. 2d 23, 27 (D.D.C. 2008) (finding the double jeopardy clause "simply not applicable to parole decisions"). So, the Court finds no grounds for issuing the writ based on either the separation of powers doctrine or the double jeopardy clause.

### B. Ex Post Facto

An *ex post facto* violation occurs when a law "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). Petitioner contends that he was subjected to an *ex post facto* violation when the Commission applied its "own new federal guidelines to the petitioner's state sentence and [took away his] street-time credits." Pet. at 5. He posits that the rescission of the eight years he spent on parole "unlawfully extended [his sentence] expiration date to December 4, 2023 [sic], when [his] parole term would have expired in the year of 2015."[4] *Id*. at 4.

---

[4] Petitioner agreed in June 2008 to the Commission's expedited decision to revoke his parole, rescind his street-time credit, and release him back to parole on August 27, 2008. Petitioner also agreed to waive his right to a revocation hearing and right to appeal that decision. Ex. 15. He therefore is "circumvent[ing] the bargain he struck by now seeking habeas relief." *Rahim*, 77 F. Supp. 3d at 144. Petitioner argues for the first time in reply to the government's opposition that his "public defender . . . coerced" him into accepting the Commission's proposal and "was ineffective in his/her act of duties, by tricking Mr. Brown into participating into an in house jail probable cause hearing, knowing that probable cause hearing must be conducted by a magistrate judge . . . ." Pet'r's Reply at 4. That incredulous argument does not undermine the Commission's jurisdiction, and it does not support issuing the writ since "no constitutional right to counsel attaches to a D.C. Code offender's parole revocation proceedings, and absent such a right 'there can be no deprivation of effective assistance.'" *Harris v. Fulwood*, 947 F. Supp. 2d 26, 29 (D.D.C. 2013), quoting *Coleman v. Thompson*, 501 U.S. 22, 752 (1991); *see Washington v. U.S. Parole Comm'n*, 859 F. Supp. 2d 21, 23 (D.D.C. 2012) (rejecting similar coercion argument

Petitioner's *ex post facto* claim has no traction for two reasons.  First, the rescission of street-time credit did not amount to increased punishment; it simply "returned [petitioner] to the position he would have been but for his release to parole." *Thompson*, 511 F. Supp. 2d at 113, citing *DiFrancesco*, 449 U.S. at 137.  Second, the controlling law went into effect in 1932, long before petitioner committed his offense, and it "was never repealed." *Davis v. Moore*, 772 A.2d 204, 215 (D.C. 2001) (en banc).  It is established that in 2008, when the instant revocation occurred, the rescission of street-time credit was required by D.C. Code § 24-406 (formerly § 24-206).[5]  *See U.S. Parole Comm'n v. Noble*, 693 A.2d 1084, 1094-1104 (D.C. 1997), *reinstated* 711 A.2d 85 (D.C. 1998) (en banc) (interpreting D.C. Code § 24-206(a) as requiring forfeiture of street-time credit on certification of question from the District of Columbia Circuit); *McKee v. U.S. Parole Comm'n*, 214 Fed. Appx. 1, 2 (D.C. Cir. 2006) ("*Noble* provided an authoritative statement of the meaning of D.C. Code § 24-206(a) (1981) that was consistent with the statutory language."); *Campbell*, 563 F. Supp. 2d at 25-26 (discussing "firmly established" precedent that later statute

---

"as [petitioner] had no right to counsel at his parole-revocation hearing, he had no right to effective assistance of counsel there").

[5]   The statute provided:

> If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody . . . . The time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced.

D.C. Code § 24–206(a) (1981).  The statute was amended on May 20, 2009, so that a parolee is now credited for street time upon revocation, save two exceptions.  *Id*. § 24-406(c).  But the amendments are not retroactive.  *See id.*, § 24-406(d) ("The provisions of subsection (c) shall apply only to any period of parole that is being served on or after May 20, 2009, and shall not apply to any period of parole that was revoked prior to May 20, 2009."

providing for street-time credit upon revocation did not repeal older statute requiring forfeiture of street-time credit upon revocation); *Morrison v. U.S. Parole Comm'n*, No. 04-2192, 2006 WL 1102805, at *3 (D.D.C. Apr. 26, 2006) ("The forfeiture of street time under *Noble* has consistently withstood constitutional challenge.") (citing cases).  So, "there [was] no *ex post facto* violation when [petitioner's] sentence was recalculated to exclude any credit previously given for street time."  *Jones v. Bureau of Prisons*, No. 02-5054, 2002 WL 31189792, at *1 (D.C. Cir. Oct. 2, 2002), citing *Davis*, 772 A.2d at 214-15.

## CONCLUSION

The U.S. Parole Commission acted lawfully and within its jurisdiction when it revoked petitioner's parole in June 2008 and rescinded more than eight years of time spent on parole.  Accordingly, the petition will be denied.   An order will issue separately.

DATE: June 6, 2016

AMY BERMAN JACKSON
United States District Judge